1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

VANESSA FREITAS,

              Plaintiff,

     v.

MICHAEL ASTRUE, Commissioner of
Social Security Administration,

              Defendant.

CASE NO.     C07-5016FDB

REPORT AND
RECOMMENDATION

Noted for August 31, 2007

     This matter has been referred to Magistrate Judge J. Kelley Arnold pursuant to 28 U.S.C. §
636(b)(1)(B) and Local Magistrates Rule MJR 4(a)(4) and as authorized by Mathews, secretary of H.E.W.
v. Weber, 423 U.S. 261 (1976).  This matter has been fully briefed, and after reviewing the record, the
undersigned recommends that the Court remand the Administration's decision for further consideration.

FACTUAL AND PROCEDURAL  BACKGROUND

     Plaintiff, Vanessa Freitas , was born in 1976 (she was 21 years old at the time of her alleged date of
disability, October 23, 1997).  She attended school and earned a high school general equivalency diploma.
Plaintiff has past work experience as a laborer, landscaper and daycare assistant.

     Plaintiff, has alleged disability due to scoliosis, sciatic nerve pain and head pain (Tr. 117, 145).  She
filed an application for Social Security Disability benefits on July 17, 2001 (Tr. 117-119). To be entitled to
these benefits, she must establish disability prior to June 30, 1999, which is her date last insured ("DLI").
She also filed a claim for Supplemental Security Income (SSI), with a protective filing date of July 12,

1  2001 (Tr. 421).

2       Her applications were denied at the Initial and Reconsideration administrative levels, and on

3  September 11, 2003, a hearing was held by an Administrative Law Judge ("ALJ").  The ALJ denied her

4  claims on January 10, 2004, (Tr. 44-59), but this decision was reversed by order of the administrative

5  Appeals Council on April 4, 2005, because the hearing tape could not be located and transcribed (Tr. 60).

6  Subsequently, the ALJ was required to hold another hearing, which occurred on March 2, 2006 (Tr.

7  434-487).  The ALJ  issued a written decision  June 20, 2006, (Tr. 19-40), finding that Ms. Freitas has

8  scoliosis and lumbar degenerative joint disease that cause functional impairments and limiting her to

9  sedentary level work in which she can alternate between sitting and standing (Tr. 24-25).  The ALJ

10 concluded that Plaintiff was not disabled because she could perform the jobs of surveillance system monitor

11 or charge account clerk (Tr. 38-40).  The Appeals Council denied Ms. Freitas' request for review on

12 December 1, 2006, leaving the ALJ's decision as the final administrative decision (Tr. 11-14).

13      On January 12, 2007, Plaintiff filed the instant Complaint with the Court, seeking judicial review of

14 the ALJ's denial of his applications for social security benefits.  Plaintiff specifically claims the ALJ erred

15 by (a) failing to give appropriate weight to the opinion of Dr. Gritzka, an examining orthopedic surgeon;

16 (b) failing to properly consider lay evidence; (c) failing to properly consider Plaintiff's testimony and

17 credibility regarding her symptoms and limitations; and (d) failing to show Plaintiff is capable of performing

18 other work in the national economy.

19                              DISCUSSION

20      This Court must uphold the determination that plaintiff is not disabled if the ALJ applied the proper

21 legal standard and there is substantial evidence in the record as a whole to support the decision.  Hoffman

22 v. Heckler, 785 F.2d 1423, 1425 (9th Cir. 1986).  Substantial evidence is such relevant evidence as a

23 reasonable mind might accept as adequate to support a conclusion.  Richardson v. Perales, 402 U.S. 389,

24 401 (1971); Fife v. Heckler, 767 F.2d 1427, 1429 (9th Cir. 1985).  It is more than a scintilla but less than a

25 preponderance.  Sorenson v. Weinberger, 514 F.2d 1112, 1119 n.10 (9th Cir. 1975); Carr v. Sullivan, 772

26 F. Supp. 522, 525 (E.D. Wash. 1991).  If the evidence admits of more than one rational interpretation, the

27 Court must uphold the Secretary's decision.  Allen v. Heckler, 749 F.2d 577, 579 (9th Cir. 1984).

28      If a treating doctor's opinion is contradicted by another doctor, the Commissioner may not reject

REPORT AND RECOMMENDATION
Page - 2

1   this opinion without providing "specific and legitimate reasons" supported by substantial evidence in the

2   record for doing so.  Murray v. Heckler, 722 F.2d 499, 502 (9th Cir. 1983).  "The opinion of a

3   nonexamining physician cannot by itself constitute substantial evidence that justifies the rejection of the

4   opinion of either an examining physician or a treating physician."  Lester v. Chater, 81 F.3d 821, 831 (9th

5   Cir. 1996).  In Magallanes v. Bowen, 881 F.2d 747, 751-55 (9th Cir. 1989), the Ninth Circuit upheld the

6   ALJ's rejection of  a treating physician's opinion because the ALJ relied not only on a nonexamining

7   physician's testimony, but in addition, the ALJ relied on laboratory test results, contrary reports from

8   examining physicians and on testimony from the claimant that conflicted with the treating physician's

9   opinion.

10          Here, Plaintiff argues that the ALJ improperly rejected the opinion of Dr. Gritzka (Plaintiff's

11   Opening Brief at 13-16).

12          On October 10, 2002, Dr. Gritzka, performed an orthopedic examination, reviewed  the medical

13   evidence of record to date, and prepared a written report. (Tr. 268-274).  As mentioned above Dr. Gritzka

14   is a orthopedic surgeon, who did not treat Plaintiff but performed an exam of her physical condition.  Dr.

15   Gritzka specifically addressed Ms. Freitas' medical records and her functional complaints, stating the

16   following:

17          The examinee has findings suggestive of an anomalies lumbo sacral take off with a
            secondary compensatory thoracic lumbar scoliosis.  Her symptoms of her back "popping
18          out" are consistent with an anomaly of the lumbar spine that is unstable.  For example,
            unilateral sacralization of L5 or an ilio lumbar articulation will produce the type of
19          symptoms the examinee has.  In combination with her gluteal pigmentation and the atrophy
            of the gluteal muscles on the left, one has to think of conditions of neurofibromatosis.
20
            The examinee does need further evaluation.  The first thing to be done is to take good x-
21          rays of her lumbar spine and pelvis and, probably, a CT scan of the lumbar spine and pelvis
            to determine whether she does or does not have an anomaly of the lumbar spine that is
22          causing her symptoms.

23          This is based on the fact that she has scoliosis and it seems to be associated with oblique
            lumbar take off and her symptoms of popping and snapping and her back "going out"
24          repetitively, and the pigmentation of the examinee's buttock (which is increasing in size she
            states).  On a more probable than not basis, she probably has an unstable minor anomaly at
25          the lumbo sacral junction.

26          With regard to the examinee's description of her physical capabilities: 1) that she can lift
            and carry 10 pounds occasionally; 2) that she must alternate positions frequently during the
27          day, every 5-10 minutes; 3) that she must rest 15-20 minutes at least several times during
            the day the frequency depending on her activities, for example she can do housework but
28          only 15-30 minutes at a time; and 4) that she has "bad days" about once a week when she
            cannot function  at all. These complaints are reasonable.  If she has a minor anomaly of the

lumbar spine, this is a condition in which her back will "go out" and become acutely symptomatic disabling her. This event would occur on an unpredictable basis and could certainly disable her for several days at a time.

(Tr. 274).

After reviewing the ALJ's June 20, 2006 decision, the undersigned finds that the reasons provided by the ALJ for discrediting Dr.Gritzka's opinion are insufficient.  The ALJ wrote:

[Dr. Gritzka's] is given little weight for several reasons.  Dr. Gritzka's opinion was almost certainly solicited and perhaps paid for by claimant's attorney.  Dr. Gritzka provided no basis for accepting claimant's subjective claims other than a suspected condition, which is not supported by anything else in the record.

(Tr. 30).  While the ALJ stated there were "several" reasons for discrediting the opinion of Dr. Gritzka, the two reasons stated above appear to be the only reasons provided by the ALJ.  The first basis – the opinion was presumed to have been paid for and/or solicited by Plaintiff's attorney – is not legally sufficient.  As noted by Plaintiff, in her opening brief, "the purpose for which medical records are obtained does not provide a legitimate basis for rejecting them", *quoting* Lester. v. Chater, 81 F.3d 821, 832 (9th Cir. 1996). The second reason – Dr. Gritzka's failure to provide a basis or reason to accept Plaintiff subjective claims – similarly does not provide a legitimate basis to discredit his opinion.   A physician must necessarily take into account a subjective summary of a patient's condition, and it is significant to point out that a medical professional is trained to weigh the subjective symptoms in light of their training, experience, and objective examination.  In this case, Dr. Gritzka weighed the facts presented to him (Plaintiff's statements, Plaintiff's medical history from other physicians, his own observations and examinations) and concluded that Plaintiff's stated limitations were reasonable.   The ALJ did not properly consider Dr. Gritzka's expert opinion.

The undersigned further finds the ALJ in this matter failed to properly develop the record with regard to Plaintiff's credibility.  Plaintiff argues the ALJ failed to properly consider her subjective statements regarding the severity of her limitations.  The ALJ stated, "Claimant is not fully credible, and the statements from her and her neighbor are only given weight to the extent they are consistent with claimant's residual functional capacity." (Tr. 38).   In context of a credibility analysis, the ALJ relied on Plaintiff's failure to attend physical therapy to discredit her testimony.  The ALJ's decision emphasizes that Plaintiff claimed that she was told by her treating physician (Dr. Anderson) that he essentially  did not want her to go to physical therapy due to the fact that it was a long ride in a car to and from the physical

therapist's office, which would not be good for her back pain.  The ALJ stated he found no records to support Plaintiff's understanding of her need to go to physical therapy to improve her condition.  *See* (Tr. 37-38.  Significantly, at the administrative hearing Plaintiff's attorney offered to solicit Dr. Anderson's opinion on this matter to resolve any ambiguity and to support the Plaintiff's understanding.  The ALJ declined, first stating, "I don't want him {Dr. Anderson] making up testimony or trying to help her out," but quickly backtracked and agreed to keep the record open to allow Plaintiff's attorney the time to provide the documentation in the record (Tr. 474-475).   Not only did the ALJ err in not trying to obtain this information himself, rather than putting the burden on the plaintiff, if he intended to rely on it to discredit the Plaintiff, the record did support Plaintiff's testimony.  Dr. Beck noted the difficulty of driving to and from physical therapy and recommended an independent program (Tr. 323), which Plaintiff stated she was performing.

Having concluded that the ALJ improperly evaluated the medical opinion of Dr. Gritzka and the Plaintiff testimony or credibility regarding the severity of her limitations, it is necessary to remand the matter to the administration for further consideration.  Plaintiff asks the court to exercise its discretion to remand the matter with directions to reverse the administrative decision and award appropriate benefits.  Plaintiff's argument relies heavily on the assertion that the court should credit as true the medical opinions of Dr. Gritzka, as well as Plaintiff's subjective pain allegations.

The following test is used to determine when evidence should be credited and an immediate award of benefits directed: "(1) the ALJ has failed to provide legally sufficient reasons for rejecting such evidence, (2) there are no outstanding issues that must be resolved before a determination of disability can be made, and (3) it is clear from the record that the ALJ would be required to find the claimant disabled were such evidence credited."  Harman v. Apfel, 211 F.3d 1172, 1178 (9th Cir.2000)(*quoting* Smolen v. Chater, 80 F.3d 1273, 1292 (9th Cir.1996).

In Harman the social security claimant argued the ALJ improperly rejected medical testimony and the district court was obligated to credit the opinion as true.  The Ninth Circuit rejected the argument, stating:

> Appellant supports his argument that Dr. Fox's testimony should be credited by citation to *Lester v. Chater*, 81 F.3d 821 (9th Cir.1995) and *Smolen v. Chater*, 80 F.3d 1273 (9th Cir.1996).  In *Lester*, we wrote that "[w]here the Commissioner fails to provide adequate reasons for rejecting the opinion of a treating or examining physician, we credit

that opinion 'as a matter of law.' " *Lester*, 81 F.3d. at 834, *quoting Hammock v. Bowen*, 879 F.2d 498, 502 (9th Cir.1989).  We built upon this rule in *Smolen* by positing the following test for determining when evidence should be credited and an immediate award of benefits directed:

> (1) the ALJ has failed to provide legally sufficient reasons for rejecting such evidence, (2) there are no outstanding issues that must be resolved before a determination of disability can be made, and (3) it is clear from the record that the ALJ would be required to find the claimant disabled were such evidence credited.

*Smolen*, 80 F.3d at 1292. [Footnote omitted]

The Commissioner attacks Appellant's reliance on *Lester* by arguing that the record in that case contained no evidence capable of supporting the rejection of the medical opinions, while here, according to the Commissioner, there is such evidence. [Footnote omitted]  However, even assuming arguendo that there is material in the record upon which the ALJ legitimately could have rejected Dr. Fox's testimony, the Commissioner's attempt to distinguish *Lester* is not well founded.  In *Varney v. Secretary of Health and Human Services (Varney II)*, 859 F.2d 1396 (9th Cir.1988), this court addressed the propriety of adopting the Eleventh Circuit's practice of accepting a claimant's pain testimony as true when it is inadequately rejected by the ALJ. In language which is equally applicable here, we stated:

> Requiring the ALJs to specify any factors discrediting a claimant at the first opportunity helps to improve the performance of the ALJs by discouraging them from reach[ing] a conclusion first, and then attempt[ing] to justify it by ignoring competent evidence.... [¶ And] the rule [of crediting such testimony] ensures that deserving claimants will receive benefits as soon as possible....

> ..   Certainly there may exist valid grounds on which to discredit a claimant's pain testimony....  But if grounds for such a finding exist, it is both reasonable and desirable to require the ALJ to articulate them in the original decision.

*Id.* at 1398-99. (Emphasis added; internal quotes and citation omitted).

Our reliance on *Varney II* to justify the current application of *Smolen* does not obscure the more general rule that the decision of whether to remand for further proceedings turns upon the likely utility of such proceedings. *See Lewin v. Schweiker*, 654 F.2d 631, 635 (9th Cir.1981). Rather, the *Smolen* test still enables only a limited exception to the general rule.

We conclude that if the Smolen test is satisfied with respect to Dr. Fox's testimony, then remand for determination and payment of benefits is warranted regardless of whether the ALJ *might* have articulated a justification for rejecting Dr. Fox's opinion.

*B. Applying the Test*

Not surprisingly, the parties disagree as to whether the Smolen test is met here. Specifically, they disagree as to whether crediting Dr. Fox's opinion mandates a finding of disability.  [Footnote omitted]  We conclude that it does not.

Harman, 211 F.3d at 1178-79 (9th Cir. 2000), *cert. denied*,  531 U.S. 1038 (2000).

The Harman court found the Smolen test did not apply after reviewing the need for remand and

whether benefits could be awarded as a matter of law.  Because additional materials on remand needed to be considered, because the medical opinion that Appellant is totally disabled is a medical rather than a legal conclusion and because there was no testimony from the vocational expert that the limitations found would render the claimant unable to engage in any work the <u>Harman</u> court did not apply the <u>Smolen</u> test to credit the medical opinion as true.  The matter was remanded without conditions directing the administration to credit the improperly rejected medical opinion as true.

In the case at hand the undersigned finds remand with a directive to the administration to credit the medical opinion, and/or the statements and testimony, as true, would be inappropriate.  Here, remand is necessary to allow the administration the opportunity to properly review the medical record and cure the mistakes the ALJ made in his decision.  It would be essentially impossible for the court to reverse the decision without doing its own evaluation of the evidence of record, specifically in regard to whether or not Plaintiff would be entitled to DLI benefits or at what date she became disabled which might entitle her to the SSI benefits for which she has applied.  Accordingly, the record is incomplete.  The administration should be given the opportunity to reconsider the evidence and apply the five-steps of the evaluation process to determine if Plaintiff is disabled and entitled to any benefits.

<u>CONCLUSION</u>

Based on the foregoing discussion, the Court should remand the Administration's final decision, which denied plaintiff's applications for social security disability benefits, for further consideration.  When the administration reconsiders this matter **a different ALJ** should review all the medical evidence, plaintiff's testimony, and expert opinions to complete steps two through five of the evaluation process.

Pursuant to 28 U.S.C. § 636(b)(1) and Rule 72(b) of the Federal Rules of Civil Procedure, the parties shall have ten (10) days from service of this Report to file written objections. *See also* Fed.R.Civ.P. 6.  Failure to file objections will result in a waiver of those objections for purposes of appeal.  <u>Thomas v.</u>

1  Arn, 474 U.S. 140 (1985).  Accommodating the time limit imposed by Rule 72(b), the clerk is directed to

2  set the matter for consideration on **August 31, 2007**, as noted in the caption.

3

4         DATED this 7th day of August, 2007.

5

6                                  _/s/ J. Kelley Arnold_____
                                   J. Kelley Arnold
7                                  U.S. Magistrate Judge

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

REPORT AND RECOMMENDATION
Page - 8